# EXHIBIT A

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SOVEREIGN BANK, a federal savings bank, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 10-4314 |
| INLAND BANK AND TRUST, f/k/a Amerimark Bank, an Illinois banking association, as trustee under Trust No. 01-522, *et al.*, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF PETER TRIANO IN SUPPORT
OF MOTION TO APPOINT MOGLIA ADVISORS AS RECEIVER**

I, Peter Triano, hereby state under penalty of perjury as follows:

1.     I am employed by Sovereign Bank ("*Sovereign*"), the plaintiff in the captioned foreclosure case, as Vice President, and I am authorized to make this declaration in support of Sovereign's Motion to Appoint Moglia Advisors as Receiver.

2.     On or about August 16, 2007, Sovereign, as lender, and Joseph Pav ("*Pav*") and Inland Bank and Trust, f/k/a Amerimark Bank, as the trustee (the "*Trustee*") under Trust No. 01-522, dated August 1, 2001 (the "*Trust*"), as the borrowers, entered into a Multifamily Note (the "*Note*") in the principal amount of $529,000.  A true and correct copy of the Note is attached hereto as **Exhibit 1**.

3. In connection with the Note, Pav and the Trustee executed a Multifamily Mortgage, Assignment of Rents and Security Agreement (the "*Mortgage*") in favor of Sovereign. A true and correct copy of the Mortgage is attached as **Exhibit 2**.

4. A copy of the Mortgage was recorded with the Office of the Cook County Recorder on August 22, 2007 as Document No. 0723447128.

5. No payments have been made under the Note and Mortgage since February 2009.

6. The total amount due and owing under the Note as of June 29, 2010, is not less than $655,348.02, plus any applicable prepayment premium, consisting of the following:

| | |
|---|---|
| Principal Balance Due | $519,680.23 |
| Interest Due @ 6.000% | $43,999.59 |
| Default Interest Due | $70,156.82 |
| Late Charges | $3, 749.20 |
| Prepayment premium | TBD |
| Cullen and Dykman | $208.00 |
| Cook Count | $5.00 |
| Return Fee | $100.00 |
| Appraisal Fee | $1,500.00 |
| Inspection Fee | $350.00 |
| Legal Fee | $2,500.00 |
| Escrow Balance Due | $13,099.18 |
| **Total payoff amount** | **$655,348.02** |

7. The per diem interest accruing under the Note and Mortgage is $86.61.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

July 23, 2010

_____
Peter Triano

2

# EXHIBIT 1

# MULTIFAMILY NOTE

US $529,000.00

as of the 16th day of August, 2007.

**FOR VALUE RECEIVED,** the undersigned ("**Borrower**") jointly and severally (if more than one) promises to pay to the order of Sovereign Bank, a federal savings bank, having an office at 195 Montague Street, Brooklyn, New York 11201, the principal sum of Five Hundred Twenty Nine Thousand and 00/100 Dollars (US $529,000.00), with interest accruing at the Interest Rate on the unpaid principal balance from the Disbursement Date until fully paid.

   1.    **Defined Terms.** In addition to defined terms found elsewhere in this Note, as used in this Note, the following definitions shall apply:

**Amortization Period:** 360 months.

**Business Day:** Any day other than a Saturday, Sunday or any other day on which Lender is not open for business.

**Debt Service Amounts:** Amounts payable under this Note, the Security Instrument or any other Loan Document.

**Default Rate:** A rate equal to the lesser of 4 percentage points above the Interest Rate or the maximum interest rate which may be collected from Borrower under applicable law.

**Disbursement Date:** The date of disbursement of Loan proceeds hereunder.

**First Payment Date:** The first day of October, 2007.

**Indebtedness:** The principal of, interest on, or any other amounts due at any time under, this Note, the Security Instrument or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of the Security Instrument under Section 12 of the Security Instrument.

**Interest Rate:** The annual rate of Six percent (6.00%).

**Lender:** The holder of this Note.

**Loan:** The loan evidenced by this Note.

**Loan Term:** 60 months.

**Maturity Date:** The first day of September, 2012, or any earlier date on which the unpaid principal balance of this Note becomes due and payable by acceleration or otherwise.

**Property Jurisdiction:** The jurisdiction in which the Land is located.

**Security Instrument:** A multifamily mortgage, deed to secure debt or deed of trust dated as of the date of this Note.

**Yield Maintenance Period Term or Prepayment Premium Period Term:** 54 months.

**Yield Maintenance Period End Date or Prepayment Premium Period End Date:** The last day of February, 2012.

Event of Default, Key Principal and other capitalized terms used but not defined in this Note shall have the meanings given to such terms in the Security Instrument.

     **2.**     **Address for Payment.** All payments due under this Note shall be payable at 195 Montague Street, Brooklyn, New York 11201, or such other place as may be designated by written notice to Borrower from or on behalf of Lender.

     **3.**     **Payment of Principal and Interest.** Principal and interest shall be paid as follows:

     **(a)**     **Short Month Interest.** If disbursement of principal is made by Lender to Borrower on any day other than the first day of the month, interest for the period beginning on the Disbursement Date and ending on and including the last day of the month in which such disbursement is made shall be payable simultaneously with the execution of this Note.

     **(b)**     **Interest Computation.** Interest under this Note shall be computed on the basis of (check one only):

          ☒     **30/360.** A 360-day year consisting of twelve 30-day months.

          ☐     **Actual/360.** A 360-day year. The amount of each monthly payment made by Borrower pursuant to Paragraph 3(c) below that is allocated to interest will be based on the actual number of calendar days during such month and shall be calculated by multiplying the unpaid principal balance of this Note by the per annum Interest Rate, dividing the product by 360 and multiplying the quotient by the actual number of days elapsed during the month. Borrower understands that the amount allocated to interest for each month will vary depending on the actual number of calendar days during such month.

     **(c)**     **Monthly Installments.** Consecutive monthly installments of principal and interest, each in the amount of Three Thousand One Hundred Seventy One and 62/100 Dollars (US $3,171.62), shall be payable on the First Payment Date and on the first day of every month thereafter, until the entire unpaid principal balance evidenced by this Note is fully paid. Any remaining principal and interest shall be due and payable on the Maturity Date. The unpaid principal balance shall continue to bear interest after the Maturity Date at the Default Rate set forth in this Note until and including the date on which it is paid in full.

(d) **Payments Before Due Date.** Any regularly scheduled monthly installment of principal and interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due.

(e) **Accrued Interest.** Any accrued interest remaining past due for 30 days or more shall be added to and become part of the unpaid principal balance and shall bear interest at the rate or rates specified in this Note. Any reference herein to "accrued interest" shall refer to accrued interest which has not become part of the unpaid principal balance. Any amount added to principal pursuant to the Loan Documents shall bear interest at the applicable rate or rates specified in this Note and shall be payable with such interest upon demand by Lender and absent such demand, as provided in this Note for the payment of principal and interest.

**4.** **Application of Payments.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Borrower agrees that neither Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due and payable nor Lender's application of such payment shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction.

**5.** **Security.** The Indebtedness is secured, among other things, by the Security Instrument, and reference is made to the Security Instrument for other rights of Lender concerning the collateral for the Indebtedness.

**6.** **Acceleration.** If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium payable under Paragraph 10, if any, and all other amounts payable under this Note and any other Loan Document shall at once become due and payable, at the option of Lender, without any prior notice to Borrower. Lender may exercise this option to accelerate regardless of any prior forbearance.

**7.** **Late Charge.** If any monthly installment due hereunder is not received by Lender on or before the 10th day of each month or if any other amount payable under this Note or under the Security Instrument or any other Loan Document is not received by Lender within 10 days after the date such amount is due, counting from and including the date such amount is due, Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to 5 percent of such monthly installment or other amount due. Borrower acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charge payable pursuant to this Paragraph represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payment. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Paragraph 8.

**8.** **Default Rate.** So long as any monthly installment or any other payment due under this Note remains past due for 30 days or more, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or other payment due, as applicable, at the Default Rate. If the unpaid principal balance and all accrued interest are not paid in full on the

**Multifamily Non-Recourse Fixed Rate Note – Multistate**
**Fannie Mae**
[Loan #7209761 - File #D07-0726]

Form 4100
10-05

Page 3
© 1997-2005 Fannie Mae

Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. Borrower also acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, that, during the time that any monthly installment or payment under this Note is delinquent for more than 30 days, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities, and that it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment or other payment due under this Note is delinquent for more than 30 days, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan.

9.      [Intentionally Deleted]

10.     **Voluntary and Involuntary Prepayments.**

(a)      A prepayment premium shall be payable in connection with any prepayment made under this Note as provided below:

(1)      Borrower may voluntarily prepay all (but not less than all) of the unpaid principal balance of this Note only on the last calendar day of a calendar month (the "Last Day of the Month") and only if Borrower has complied with all of the following:

(i)      Borrower must give Lender at least 30 days (if given via U.S. Postal Service) or 20 days (if given via facsimile, email or overnight courier), but not more than 60 days, prior written notice of Borrower's intention to make a prepayment (the "Prepayment Notice"). The Prepayment Notice shall be given in writing (via facsimile, email, U.S. Postal Service or overnight courier) and addressed to Lender. The Prepayment Notice shall include, at a minimum, the Business Day upon which Borrower intends to make the prepayment (the "Intended Prepayment Date").

(ii)      Borrower acknowledges that the Lender is not required to accept any voluntary prepayment of this Note on any day other than the Last Day of the Month even if Borrower has given a Prepayment Notice with an Intended Prepayment Date other than the Last Day of the Month or if the Last Day of the Month is not a Business Day. Therefore, even if Lender accepts a voluntary prepayment on any day other than the Last Day of the Month, for all purposes (including the accrual of interest and the calculation of the prepayment premium), any prepayment received by Lender on any day other than the Last Day of the Month shall be deemed to have been received by Lender on the Last Day of the Month and any

prepayment calculation will include interest to and including the Last Day of the Month in which such prepayment occurs. If the Last Day of the Month is not a Business Day, then the Borrower must make the payment on the Business Day immediately preceding the Last Day of the Month.

(iii)  Any prepayment shall be made by paying (A) the amount of principal being prepaid, (B) all accrued interest (calculated to the Last Day of the Month), (C) all other sums due Lender at the time of such prepayment, and (D) the prepayment premium calculated pursuant to Schedule A.

(iv)  If, for any reason, Borrower fails to prepay this Note (A) within five (5) Business Days after the Intended Prepayment Date or (B) if the prepayment occurs in a month other than the month stated in the original Prepayment Notice, then Lender shall have the right, but not the obligation, to recalculate the prepayment premium based upon the date that Borrower actually prepays this Note and to make such calculation as described in Schedule A attached hereto. For purposes of such recalculation, such new prepayment date shall be deemed the "Intended Prepayment Date."

(2)  Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (i) all accrued interest and all other sums due Lender under this Note and the other Loan Documents, and (ii) the prepayment premium calculated pursuant to Schedule A.

(3)  Any application by Lender of any collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the Maturity Date and in the absence of acceleration shall be deemed to be a partial prepayment by Borrower, requiring the payment to Lender by Borrower of a prepayment premium.

(b)  Notwithstanding the provisions of Paragraph 10(a), no prepayment premium shall be payable (1) with respect to any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Security Instrument, or (2) as provided in subparagraph (c) of Schedule A.

(c)  Schedule A is hereby incorporated by reference into this Note.

(d)  Any required prepayment of less than the entire unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing.

(e)  Borrower recognizes that any prepayment of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth on Schedule A represents a reasonable estimate of the damages Lender will incur because

**Multifamily Non-Recourse Fixed Rate Note – Multistate**
**Fannie Mae**
[Loan #7209761 - File #D07-0726]

Form 4100
10-05

Page 5
© 1997-2005 Fannie Mae

of a prepayment.

(f)     Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for the loan evidenced by this Note, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions.

**11.     Costs and Expenses.** Borrower shall pay on demand all expenses and costs, including fees and out-of-pocket expenses of attorneys and expert witnesses and costs of investigation, incurred by Lender as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding.

**12.     Forbearance.** Any forbearance by Lender in exercising any right or remedy under this Note, the Security Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment. Enforcement by Lender of any security for Borrower's obligations under this Note shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right or remedy available to Lender.

**13.     Waivers.** Presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting the Indebtedness are waived by Borrower, Key Principal, and all endorsers and guarantors of this Note and all other third party obligors.

**14.     Loan Charges.** Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate provided for in this Note and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the loan evidenced by this Note and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents. Neither this Note nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

15.    **Commercial Purpose.** Borrower represents that the Indebtedness is being incurred by Borrower solely for the purpose of carrying on a business or commercial enterprise, and not for personal, family or household purposes.

16.    **Counting of Days.** Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days, not Business Days.

17.    **Governing Law.** This Note shall be governed by the law of the jurisdiction in which the Land is located.

18.    **Captions.** The captions of the paragraphs of this Note are for convenience only and shall be disregarded in construing this Note.

19.    **Notices.** All notices, demands and other communications required or permitted to be given by Lender to Borrower pursuant to this Note shall be given in accordance with Section 31 of the Security Instrument.

20.    **Consent to Jurisdiction and Venue.** Borrower and Key Principal each agrees that any controversy arising under or in relation to this Note shall be litigated exclusively in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to this Note. Borrower and Key Principal each irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

21.    **WAIVER OF TRIAL BY JURY. BORROWER, KEY PRINCIPAL AND LENDER EACH (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER, KEY PRINCIPAL AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**ATTACHED SCHEDULES. The following Schedules are attached to this Note:**

☒    Schedule A    Prepayment Premium (required)

☒    Schedule B    Modifications to Multifamily Note

**IN WITNESS WHEREOF**, Borrower has signed and delivered this Note or has caused this Note to be signed and delivered by its duly authorized representative.

**BORROWER**

AmeriMark Bank, an Illinois banking association, as Trustee under Trust Agreement dated August 1, 2001 and known as Trust Number 01-522 and Joseph J. Pav ("Beneficiary") under the referenced Trust Agreement.

By: _Carly Sale V.P._

Name: CARLA J. SALERNO

Title: Trustee

By: _____

Name: Joseph J. Pav

Title: Beneficiary

_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_

Borrower's Social Security/Employer ID Number

State of Illinois )
: ss.:
County of Cook )

I, _The undersign_, a notary public in and for said County and State aforesaid, do hereby certify that on this day personally appeared before me and personally known to me to be CARLA J. SALERNO and acknowledged that he/she signed and delivered said instrument as his/her free and voluntary act in his/her capacity.

Given under my hand and official seal this _14th_ day of August, 2007.

_Kathleen Spero_

Notary Public

My commission expires: _2-6-10_

"OFFICIAL SEAL"
KATHLEEN I. SPERO
Notary Public, State of Illinois
My Commission Expires 02/06/10

State of Illinois    )
                : ss.:
County of Cook   )

I, _Linda S. Skupien_ a notary public in and for said County and State aforesaid, do hereby certify that on this day personally appeared before me and personally known to me to be Joseph Pav, and acknowledged that he signed and delivered said instrument as his free and voluntary act in his capacity.

Given under my hand and official seal this _14th_ day of August, 2007.

_____
Notary Public

My commission expires: _10/5/10_

```
OFFICIAL SEAL
LINDA S SKUPIEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/05/10
```

**SCHEDULE A**

**PREPAYMENT PREMIUM**

Any prepayment premium payable under Paragraph 10 of this Note shall be computed as follows:

(a)     If the prepayment is made at any time after the date of this Note and before the Yield Maintenance Period End Date, the prepayment premium shall be the greater of:

    (i)     1% of the amount of principal being prepaid; or

    (ii)     The product obtained by multiplying:

        (A)     the amount of principal being prepaid,

        *by*

        (B)     the difference obtained by subtracting from the Interest Rate on this Note the yield rate (the "**Yield Rate**") on the 4.375% U.S. Treasury Security due August, 2012 (the "**Specified U.S. Treasury Security**"), on the twenty-fifth Business Day preceding (x) the Intended Prepayment Date, or (y) the date Lender accelerates the Loan or otherwise accepts a prepayment pursuant to Paragraph 10(a)(3) of this Note, as the Yield Rate is reported in *The Wall Street Journal*,

        *by*

        (C)     the present value factor calculated using the following formula:

$$\frac{1 - (1 + r)^{-n/12}}{r}$$

        [r =     Yield Rate
        n =     the number of months remaining between (1) either of the following: (x) in the case of a voluntary prepayment, the Last Day of the Month during which the prepayment is made, or (y) in any other case, the date on which Lender accelerates the unpaid principal balance of this Note and (2) the Yield Maintenance Period End Date]

        In the event that no Yield Rate is published for the Specified U.S. Treasury Security, then the nearest equivalent non-callable U.S. Treasury Security having a maturity date closest to the Yield Maintenance Period End Date of this Note shall be selected at Lender's discretion. If the publication of

**Multifamily Recourse Fixed Rate Note – Multistate**
**Fannie Mae**
[Loan #7209761 - File #D07-0726]

Form 4100
10-05

Page A-1
© 1997-2005 Fannie Mae

such Yield Rates in *The Wall Street Journal* is discontinued, Lender shall determine such Yield Rates from another source selected by Lender.

(b)     If the prepayment is made on or after the Yield Maintenance Period End Date but before the last calendar day of the 4th month prior to the month in which the Maturity Date occurs, the prepayment premium shall be 1% of the amount of principal being prepaid.

(c)     Notwithstanding the provisions of Paragraph 10(a) of this Note, no prepayment premium shall be payable with respect to any prepayment made on or after the last calendar day of the 4th month prior to the month in which the Maturity Date occurs.

Borrower Initials

**Multifamily Recourse Fixed Rate Note – Multistate**          Form 4100          Page A-2
**Fannie Mae**                                                                                    10-05          © 1997-2005 Fannie Mae
[Loan #7209761 - File #D07-0726]

## SCHEDULE B

## MODIFICATIONS TO MULTIFAMILY NOTE

The Multifamily Note dated as of the 16th day of August, 2007, in the original principal amount of $529,000.00 (the "Note") issued by AmeriMark Bank, an Illinois banking association, as Trustee, U/T/A dated August 1, 2001 and Known As Trust No. 01-522 ("Borrower") and payable to the order of Sovereign Bank ("Lender") is hereby amended as follows:

1.      The first sentence of Paragraph 7 "Late Charge" is hereby deleted and the following is substituted in lieu thereof:

"If any monthly installment due hereunder is not received by Lender on or before the 15th day of each month or if any other amount payable under this Note or under the Security Instrument or any other Loan Document is not received by Lender within 15 days after the date such amount is due, counting from and including the date such amount is due, Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to 5 percent of such monthly installment or other amount due."

2.      The definition of "Default Rate" on page 1 of this Note is hereby deleted and the following is substituted in lieu thereof:

"A rate equal to the lesser of (a) sixteen percent (16%) per annum or (b) the maximum interest rate which may be collected from Borrower under applicable law."

3.      The phrase "30 days" is deleted wherever it appears in Paragraph 8 and is replaced with the phrase "15 days".

Initial(s) _____

Multifamily Non-Recourse Fixed Rate Note – Multistate
Fannie Mae
[Loan #7209761 - File #D07-0726]

Form 4100
10-05

Page B-1
© 1997-2005 Fannie Mae

EXHIBIT A
[DESCRIPTION OF THE LAND]

All that certain plot, piece, or parcel of land with the buildings and improvements thereon erected, situate, lying, and being in the Town of Berwyn, County of Cook, State of Illinois, said plot of land being more particularly bounded and described as follows:

The North 27 feet of Lot 20 in the Chicago Title and Trust Company's subdivision of the East 30 acres of the West 1/2 of the Northeast 1/4 of Section 30, Township 39 North, Range 13, East of the Third Principal Meridian, in Cook County, Illinois.

TOGETHER with all right, title and interest of, in and to any streets and roads abutting the above described premises.

SAID PREMISES being known as and by the street number 2402 Clarence Avenue, Berwyn, Illinois 60402.